# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**BILLY BRASWELL**                                                                                          **PLAINTIFF**

**V.**                                         **CIVIL ACTION NO. 2:17-cv-00201-KS-MTP**

**VINSON GUARD SERVICE**                                                  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This cause came before the Court on the Motion for Summary Judgment filed by the Defendant, Vinson Guard Service ("Vinson") [53]. Plaintiff has responded [56], and Defendant has replied [58]. Having considered the parties' submissions, the record in this matter and the relevant legal authority, and otherwise being duly advised in the premises, the Court finds the motion is well taken and will be granted for the reasons set forth below.

## I.    BACKGROUND

This lawsuit was initiated on December 14, 2017. [1]. On February 20, 2018, Plaintiff filed an Amended Complaint against Vinson alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, solely for Vinson's alleged failure to provide him with a reasonable accommodation for his disability.[1] [8].

Vinson is a family owned company that provides security officers to hundreds of clients in a variety of industries, and particularly to Hood Industries, Inc. which owns a lumber yard in Silver Creek, Mississippi known as Miles Lumber. [53-1,2]. Vinson hired Plaintiff in August 2016 as a security guard/spark watcher at Miles Lumber. [53-3] at pp. 53-54. Plaintiff's job

---

[1] In his Amended Complaint, Plaintiff claims to "have a bad back and suffer from diabetic foot pain and a heart condition and MRSA staph kept trying to open my chest incision from [a] heart surgery on May 13, 2017." For purposes of summary judgment, Vinson asks that the Court assume that Plaintiff is a qualified individual with a disability under the ADA.

duties included spark watching, patrolling, and performing gate duty. [56-3]; [53-2] at ¶ 5. As a spark watcher on the weekends, Plaintiff was required to maintain a standing post in order to have a 360-degree view of the welders to watch for fire hazards and patrol the area for a minimum of sixty (60) minutes after the work is completed per Miles Lumber's Hot Work Policy. [53-2] at ¶ 5; [53-3] at p. 54; [56-1, 3]. Patrol duty included a forty-five (45) minute patrol round of checkpoints to monitor for hazards. [53-2] at ¶ 5. When on gate duty, Plaintiff would occasionally sit at the entrance gate, in between other duties, such as checking on trucks and deliveries. *Id.* Plaintiff had worked this same position at Miles Lumber for a different security company years earlier. [53-3] at p. 54. Plaintiff knew spark watching was an important job at the lumber mill. [53-3] at p. 55.

Plaintiff is a type II diabetic who was diagnosed with diabetic peripheral neuropathy. [56-5]. After three to four weeks on the job, Plaintiff's feet began to hurt badly during his security rounds, but the never told anyone at Vinson. [53-3] at p. 71. On May 13, 2017, he was sitting down while on spark watch duty. [53-3] at p. 72-73. A Miles Lumber supervisor, Keith Brakefield, came by and removed Plaintiff's chair. *Id*. at 72-74. Plaintiff told Brakefield he was disabled and had been using the chair for nine months. *Id*. at 74-75.

On May 17, 2017, Plaintiff met with a Vice President at Miles Lumber, who explained to Plaintiff that he needed to take his complaints to Vinson about his feet hurting and needing to use a chair. [53-3] at pp. 75-76. On May 19, 2017, Plaintiff spoke by telephone with Josh Owens, Plaintiff's direct supervisor at Vinson. Id. at 77-78. Plaintiff told Owens he needed to sit down while he was spark watching. *Id*. at p. 78. Owens told Plaintiff he needed a note from Plaintiff's doctor. *Id.* at p. 79.

After Plaintiff requested to sit down and take breaks, he worked the following days: May 20-22; 26-29; and June 10, 2017. [53-2] at ¶ 9. On May 20 and 21, 2017, Plaintiff worked a half day each day spark watching, and he sat down while doing so with no one saying anything to him. [53-8] at VINSON 00030.[2] On May 22, 26, 28 and 29, Plaintiff worked only patrol duty and gate duty and was allowed to sit down as needed every 45 minutes. [53-2] at ¶ 10. He worked spark watch duty again on May 27, 2017 when he worked part of the day on spark watch while sitting down and also rotated through patrol duty and gate duty for the rest of the day. [53-2]; [53-8] at VINSON 00029. On May 30, 2017, Plaintiff spoke with Owens again, and Plaintiff confirmed that he sat while on spark watch duty on May 27 because he needed to sit when he needed to. [53-8] at VINSON 00029. Owens told Plaintiff he needed to fill out some paperwork and again asked Plaintiff to provide a note from his doctor. *Id*.

On May 31, 2017, Plaintiff's medical provider wrote a letter, requesting that Plaintiff be allowed to sit down every 45 minutes or when needed to improve Plaintiff's symptoms related to diabetic peripheral neuropathy. [56-5]. Plaintiff provided the letter to Vinson. [53-3] 80:15-17; 81:15-17. Plaintiff states that on June 2, 2017, Owens called him and told him not to come in to work that night or the weekend, that Vinson was checking with his doctor, and Owens would get back to Plaintiff on Monday, June 5. [53-8] at VINSON 00028. On June 5, 2017, Vinson's Administrative Director wrote to Plaintiff's health care provider, seeking clarification of her May 31, 2017 letter. [53-9]. He outlined Plaintiff's job duties and asked whether Plaintiff was physically able to perform such duties and inquired about her recommendation of allowing Plaintiff to sit every 45 minutes and asked how long she recommended he be allowed sit. *Id.*

---

[2] In his declaration, Josh Owens states that after Plaintiff requested to sit down, Vinson allowed him to do so and that he was taken off spark watch duty and placed on gate duty to accommodate his request. [53-2] ¶8. However, Plaintiff was apparently not immediately taken off of spark watch duty because he undisputedly worked at least a portion of the day at spark watch duty on May 20, 21, and 27. [53-2] at ¶ 10; [53-8] at pp. 3, 4. Regardless, it is also undisputed that on those days, he sat while he was on spark watch duty. *See id*.

Plaintiff discussed Vinson's clarification letter with his medical provider—she asked him what kind of clarification Vinson was looking for, but Plaintiff could not tell her. [53-3] 84:11-23. The medical provider never provided this additional information to Vinson. [53-3] 84:24-85:1. Plaintiff told his doctor not to give Vinson any more information in response to their request. [53-3] 85:8-11; [53-10] at p. 2. Even though Vinson never received any additional information, Vinson told Plaintiff they were going to take him off of his spark watching duties to accommodate him, and Plaintiff told the EEOC that. [53-3] 102:7-11. Plaintiff returned to work on June 10, 2019 and was accommodated with sitting breaks, but Plaintiff never returned to work after that day. [56-2]; [53-2] at ¶ 12. Vinson did not fire Plaintiff. [53-2] at ¶ 11; [53-3] 85:12-18. Plaintiff sought other employment about a month after not returning to work at Vinson and was hired at Allied Universal, making more money than at Vinson. [53-3] 86:12-88:17.

Following two dismissals of his EEOC charges, Plaintiff filed his initial Complaint in this action on December 14, 2017 against Vinson and Miles Lumber, the latter of which was dismissed early on [23].

## II. DISCUSSION

### A. Summary Judgment Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### B.   Analysis

Plaintiff's sole cause of action against Vinson is a "failure to accommodate" his presumed disability. To establish a prima facie case in a failure to accommodate claim, Plaintiff must prove the following: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. Louisiana, Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir.2013) (internal quotation marks omitted). Vinson focuses on the last element and argues that Plaintiff cannot establish his failure to accommodate claim because the undisputed facts show that Vinson did provide Plaintiff with a reasonable accommodation. Vinson also argues that it cannot be liable because Plaintiff withdrew from the interactive process. Plaintiff responded by arguing that he has made a prima facie case;[3] that he performed his job duties with reasonable accommodation until his chair was removed; and that Josh Owen admitted in his declaration that Plaintiff was denied an accommodation by removing him from spark watch duty, which he claims he must perform per Vinson's statement to the EEOC.

---

[3]  As Vinson points out in its reply, Plaintiff has misstated the elements of a prima facie case for a failure to accommodate under the ADA.

**1. Reasonable Accommodations**

As to Plaintiff's ability to show that Vinson failed to make reasonable accommodations, Plaintiff fails to raise a genuine issue of material fact. The facts in this case show that on May 19, 2017, Plaintiff spoke with Josh Owen of Vinson and informed him of his need to sit down and take breaks. Vinson states that it allowed him to do so—specifically taking him off spark watch duty and allowing him to sit down every 45 minutes during his walking route. [53-2] at ¶8.

Plaintiff does not contest these facts, other than to assert that taking him off spark duty is an admission of denying a reasonable accommodation because Vinson has asserted that it was a duty he must perform. That issue will be addressed below. Otherwise, the record bears out Vinson's position. Plaintiff complains throughout this process about his chair being removed. However, it is undisputed that the person who removed the chair initially, Keith Brakefield, was not a Vinson employee, but rather a Miles Lumber supervisor. In addition, after Plaintiff spoke with Vinson on May 19, 2017 and requested to sit down while spark watching, although it is not clear when the decision to remove him from spark watching was made, the record shows that he worked three more shifts on spark watch duty—May 20, 21, and 27, 2017. On each of these occasions, it is undisputed that he sat. There are no other complaints or issues surrounding the patrol or guard duty shifts. Therefore, summary judgment is warranted due to Plaintiff's inability to establish the third element of his prima facie case.

**2. Preferred Accommodation**

In response to the Motion for Summary Judgment, Plaintiff claims that Vinson admitted liability because removing him from spark watch duty was a failure to accommodate because he must perform such duty as Vinson represented in its statement to the EEOC. First, Plaintiff did not submit into evidence any statement by Vinson to the EEOC. There is a response from Miles

6

Lumber to the EEOC and a letter from Vinson to Plaintiff's healthcare provider. In any event, these documents merely set forth what Plaintiff's then-current job duties were—not that he was in some way *required* to work at all three positions.

Vinson posits that Plaintiff appears to argue that Vinson failed to provide a reasonable accommodation because it did not provide him with his preferred accommodation. [58] at p. 4. It seems Plaintiff takes issue with being removed from spark duty and being placed on gate duty, an assignment that allowed him to sit more frequently. To the extent, Plaintiff is making such an argument, it is firmly established that "[t]he ADA provides a right to a reasonable accommodation, not to the employee's preferred accommodation." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (quoting *EEOC v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)). "A disabled employee has no right . . . to choose what job to which he will be assigned . . . ." *Id.* (quoting *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 (5th Cir.2007)). Therefore, the fact that Plaintiff was taken off of spark duty does not raise an issue regarding Vinson's providing a reasonable accommodation in order to defeat summary judgment.

### 3. Withdrawal from Interactive Process

As a second basis for summary judgment, Vinson argues that it cannot incur liability under the ADA when Plaintiff caused the breakdown of the interactive process. Plaintiff does not address this issue in his response. The Court finds that Vinson is correct.

"When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *E.E.O.C. v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir.2009). "'[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.' However, "an

7

employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer.'" *Griffin*, 661 F. 3d at 224. (quoting *Loulseged v. Akzo Nobel Inc.,* 178 F.3d 731, 736 (5th Cir.1999)).

The record evidence is undisputed that Vinson requested a letter from Plaintiff's healthcare provider. After receiving the letter, Vinson requested clarification. Plaintiff has admitted that he instructed his medical provider not to provide Vinson any additional information. [53-3] 85:2-11; [53-10] at p. 2. Rather than provide the additional information, Plaintiff simply failed to report to work after June 10, 2017, thereby withdrawing from the interactive process.

As Vinson points out, it is firmly established under *Loulseged* and its progeny in this Circuit that an employer cannot be found to have violated the ADA when the employee is responsible for the breakdown of the interactive process. 178 F.3d at 736. The Fifth Circuit very recently affirmed a grant of summary judgment on facts very similar to this case where the employer provided a reasonable accommodation, yet the plaintiff resigned from his job rather than engaging in the interactive process. *Jackson v. Blue Mt. Prod. Co*., 761 Fed. Appx. 356 (5th Cir. Feb. 21, 2019). Thus, under the facts of this case, Vinson can bear no liability for a violation of the ADA, and summary judgment is warranted.

### III. CONCLUSION

Based on the foregoing, the Court finds no genuine issue of material fact that Vinson provided a reasonable accommodation and that Plaintiff withdrew from the interactive process. Accordingly, judgment as a matter of law is warranted in favor of Vinson Guard Service. Therefore, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is

granted, all other pending motions are denied as moot, and a final judgment pursuant to Federal Rule of Civil Procedure 58 will be entered separately.

SO ORDERED and ADJUDGED this 8th day of July 2019.

/s/ Keith Starrett
KEITH STARRETT
DISTRICT COURT JUDGE